UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ISAIAH HUEY, <br> MILEY HUEY, <br> JACE HUEY, <br><br>          Plaintiffs, <br><br>     v. <br><br> LARRY RUSSELL, <br> NIKKI RUSSELL, <br> PAMELA CONNELLY County Director, <br> DARREN WILKINSON Caseworker, <br> JAMES HORRALL Caseworker, <br> ROBERT TOMAW Caseworker, <br><br>          Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 2:21-cv-00091-JPH-MG <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**

Isaiah, Miley, and Jace Huey allege that they were severely abused by their former foster and adoptive parents, Larry and Nikki Russell. The Hueys bring claims against the Russells and several Indiana Department of Child Services employees who were involved with placing the Hueys with the Russells. The DCS employees have filed a partial motion to dismiss, arguing that the Hueys' federal claim under a provision of the Adoption Assistance and Child Welfare Act must be dismissed because that part of the statute does not create a federal right. Dkt. [25]. For the reasons that follow, the DCS employees' motion is **GRANTED**.

1

# I.
# Facts and Background

Because Defendants moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Isaiah, Miley, and Jace were minors at all times relevant to this lawsuit. Dkt. 21 ¶ 14. In 2007, DCS employees placed them in foster care with the Russells. *Id.* ¶ 15–17. DCS employees were responsible for investigating the Russells before selecting them as foster parents and had a continuing duty to supervise the Russells while the Hueys were entrusted to their care. *Id.* ¶ 16–17. During that time, "DCS [employees] knew or suspected that the Russells had a history of domestic violence," "were child abusers," and could not provide the Hueys with a safe home environment. *Id.* ¶¶ 68–71.

The Russells adopted the Hueys around April 2012. *Id.* ¶ 18. DCS employees were again responsible for investigating the Russells before "consent[ing] to the adoption." *Id.* ¶ 19–20. A month after the adoption was approved, Mr. Russell was charged with domestic battery against Mrs. Russell and later found guilty. *Id.* ¶¶ 21, 27. Mr. Russell had also been charged with domestic battery in 1996, and he had committed other acts of domestic violence "both before and after Plaintiffs were placed in the Russells' care." *Id.* ¶¶ 24–26.

While under the Russells' care, the Hueys were subjected to continual physical, sexual, mental, and emotional abuse. *Id.* ¶¶ 28–41. In November

2012, one of the Hueys escaped the Russells' home and sought help. *Id.* ¶ 42. The Russells were arrested a short time later. *Id.* ¶ 44. When investigators arrived at the Russells' home, they found the Huey siblings locked in a bedroom and severely malnourished, beaten, and neglected. *Id.* ¶¶ 45, 47. In November 2013, Larry and Nikki Russell were each convicted of felony counts of Neglect of a Dependent and Criminal Confinement. *Id.* ¶¶ 51–52.

The Hueys allege in Count V that the DCS employees—Darren Wilkinson, James Horrall, Robert Tomaw, and Pamela Connelly—violated Sections 671(a)(16) and 675(1)(A) of the Adoption Act. Dkt. 21 at 8–11. Specifically, Count V alleges that the DCS Employees failed to have a written case plan and a written case review system in place to ensure the Hueys' safety and wellbeing while in the Russells' care. Dkt. 21 ¶ 93–94.

The DCS employees have moved under Rule 12(b)(6) to dismiss Count V. Dkt. 25; dkt. 26 at 1.

## II.
## Applicable Law

A defendant may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. Pro. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A

facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (quoted in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020)). "[I]f as a matter of law, 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed . . . ." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.*

### III.
### Analysis

"The Adoption Act establishes a federal reimbursement program for certain expenses incurred by the States in administering foster care and adoption services." *Suter v. Artist M.*, 503 U.S. 347, 350–51 (1992). The Adoption Act has thirty-seven requirements that a State must meet to be eligible for payment. *See* 42 U.S.C. § 671(a) ("In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—"). One requirement is that a State have an approved plan which:

> provides for the development of a case plan (as defined in section 675(1) of this title and in accordance with the requirements of section 675a of this title) for each child receiving foster care maintenance payments under the State plan and provide[] for a case review system which meets the requirements described in sections

4

>    675(5) and 675a of this title with respect to each such child.

42 U.S.C. § 671(a)(16).

Count V of the Hueys' complaint alleges that the DCS employees violated § 671(a)(16) by failing to have a "written case plan" and a "case review system." Dkt. 21 at 11. The DCS employees argue that Count V must be dismissed because § 671(a)(16) of the Adoption Act does not create a federal right that is enforceable under § 1983. Dkt. 26 at 1; dkt. 45 at 1. The Hueys respond that Congress "unambiguously" intended to grant foster care children a privately enforceable federal right to have a written case plan and case review system in place. Dkt. 42 at 3–5; *see Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997).

### A. Creation of a Federal Right Enforceable Under 42 U.S.C. § 1983

42 U.S.C. § 1983 "imposes liability on 'every person who, under color of any . . . State law' violates the federal rights of another." *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021) (quoting 42 U.S.C. § 1983). But § 1983 is only a mechanism to enforce rights; it does not create any rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Therefore, to bring a claim under § 1983, a "plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820 (7th Cir. 2017) (quoting *Blessing*, 520 U.S. at 340).

"[I]t is not enough for plaintiffs to fall 'within the general zone of interest that the statute is intended to protect;' nothing 'short of an unambiguously conferred right . . . phrased in terms of the persons benefitted' can support a

5

section 1983 action." *Talevski by next friend Talevski v. Health and Hosp. Corp. of Marion Cty*, 6 F.4th 713, 718 (7th Cir. 2021) (quoting *Gonzaga*, 536 U.S. at 283–84 ("[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under" § 1983.)). To determine if a statutory provision creates a right, a court must "decide whether the text and structure of [a statute] unambiguously reveal that it establishes individual rights for a particular class of beneficiaries." *Id.* at 718 (citing *Gonzaga*, 536 U.S. at 283). To satisfy this standard, a statute's "text must be phrased in terms of the persons benefited," "with an *unmistakable focus* on the benefited class." *Gonzaga*, 536 U.S. at 284 (citations omitted).

### B. Right to Case Plan and Case-Review System Under § 671(a)(16) of the Adoption Act

Neither the Supreme Court nor the Seventh Circuit has decided whether § 671(a)(16) of the Adoption Act creates an enforceable right, so there is no precedent that is binding on the Court. Several other courts have held that § 671(a)(16) and 675(1) create rights that are enforceable through § 1983. *See, e.g.*, *Henry A. v. Willden*, 678 F.3d 991, 1008 (9th Cir. 2002); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 171–72 (D. Mass. 2011). Other courts, including one decision in the Southern District of Indiana, have reached the opposite conclusion. *Ashley W. by Next Friend Durnell v. Holcomb*, 467 F. Supp. 3d 644, 659 (S.D. Ind. 2020); *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 543–44 (D. Neb. 2007); *Olivia Y. ex rel. Johnson v. Barbour*, 351 F. Supp. 2d 543, 561–63 (S.D. Miss. 2004).

6

Here, the Court first asks whether § 671(a)(16) contains "the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Gonzaga*, 536 U.S. at 287. In *Gonzaga*, the Supreme Court concluded that FERPA did not create a right for its intended beneficiaries—students—even though they were explicitly referred to in the text of the statute. The relevant statutory text provided: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . .) of students without the written consent of their parents to any individual, agency, or organization." *Id.* at 279; 20 U.S.C. § 1232g(b)(1). Although students undoubtedly are the intended beneficiaries of that particular provision, the Court concluded that it did not create any rights for those students because the statute "sp[oke] only to the Secretary of Education." *Id.*

Here, the relevant statutory language of § 671(a)(16) similarly sets forth conditions for States to receive federal funds: "[F]or a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—. . . provides for the development of a case plan [] for each" foster care child and "provides for a case review system . . . with respect to each such child." 42 U.S.C. § 671(a)(16). While children in the foster care system are undoubtedly the intended beneficiaries, the text of § 671(a)(16) is a directive to the States. Merely referencing "each child" in the statute does not

unambiguously confer the "sort of '*individual* entitlement' that is enforceable under § 1983." *Cf. Gonzaga*, 536 U.S. at 287.

This conclusion is further supported by recent cases in which the Seventh Circuit found that the statutory language in question established individual rights for a particular class of beneficiaries. In *Talevski*, the Seventh Circuit examined a section of the Medicaid Act that provided: "a skilled nursing facility *must protect and promote the rights of each resident, including each of the following rights*." 6 F.4th at 718 (quoting 42 U.S.C. § 1396r(c)(1)(A)). The court concluded that "congress could [not] have been any clearer" that nursing home residents are entitled to certain rights under the Medicaid Act—"both protections contain exactly the type of 'rights-creating language' *Gonzaga* described as critical: they set forth 'the *rights* of each resident' and appear under the 'specified rights' heading." *Id.* at 718. The court found "dispositive the fact that Congress spoke of resident *rights*, not merely the steps that the facilities were required to take. This shows an intent to benefit nursing home residents directly." *Id.* at 719.

In *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815 (7th Cir. 2017), the Seventh Circuit considered whether a group of nursing-home operators seeking Medicaid payments had a private right under § 1396a of the Medicaid Act. *See* 42 U.S.C. § 1396a(a)(13)(A)(ii). Section 1396a reads, in relevant part:

> A State plan for medical assistance must . . . provide—
> (A) for a public process for determination of rates of payment under the plan for . . . nursing facility services, . . . under which— . . . (ii) providers, beneficiaries and their representatives, and other concerned State

8

> residents, are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications.

*Id.*

The language of the Medicaid Act provision focused on the individuals asserting the federal right—the nursing home operators—and affirmatively identified something to which they were entitled under the statute. *BT Bourbonnais*, 866 F.3d at 821. The Medicaid Act therefore has the "sort of rights creating language" contemplated by *Gonzaga* because it mandates that "providers . . . are given a reasonable opportunity for review and comment." 536 U.S. at 287. In contrast, § 671(a)(16)'s focus is on requirements that *States*—rather than the children who are benefitted—must meet to be eligible for payment under the Adoption Act. *Cf. Alexander v. Sandoval*, 532 U.S. 273, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.").

Unlike the statutes in *Talevski* and *BT Bourbonnais*, the text and structure of § 671(a)(16) do not "unambiguously reveal that it establishes individual rights for a particular class of beneficiaries." *Talevski*, 6 F.4th at 718 (citing *Gonzaga*, 536 U.S. at 283). Instead, it is phrased as a directive to *States* setting forth requirements that *States* must meet in order to receive federal funds. Nowhere does § 671(a)(16) affirmatively state that "each child" has any specific "right" or is entitled to anything. Rather, it mandates that States must develop a case plan and case review system for the benefit of foster

9

children.  *Cf. Ind. Protection and Advocacy Serv.'s*, 603 F.3d at 378 ("Unlike the statutes in *Sandoval* and *Brunner* and the regulation in *Gonzaga*, the PAIMI Act's key language is not directed at an administrator of federal funds or even at the State of Indiana as a funding recipient.  Instead, the Act directly grants rights and powers to the designated [beneficiary] that is the plaintiff here.").

Read in the context of the statute as a whole, § 671(a)(16) has an "aggregate focus" on the development and maintenance of a system to be applied uniformly to children in foster care.  *Gonzaga*, 532 U.S. at 288.  It "speak[s] only in terms of institutional policy and practice," rather than "individual instances" of a violation.  *Id.*

\*   \*   \*

In sum, Congress did not manifest "in clear and unambiguous terms" an intention to create a private federal right through § 671(a)(16).  *Gonzaga*, 536 U.S. at 290.  The statute's aggregate focus on the state plan and the lack of rights creating language forecloses the creation of a private right under *Gonzaga*.  Plaintiffs have not stated a claim for relief under the Adoption Act.

## IV.
## Conclusion

DCS employees' partial motion to dismiss for failure to state a claim for relief, dkt. [25], is **GRANTED**.  DCS employees' previous motion to dismiss is **DENIED as moot**.  Dkt. [13].  Count V of Plaintiffs' complaint is dismissed.

**SO ORDERED.**

Date: 3/31/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LARRY RUSSELL
3805 N. 25th Street
Terre Haute, IN 47805

NIKKI RUSSELL
C/O Clay County Justice Center
611 E. Jackson St.
Brazil, IN 47834

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov

Molly Michelle McCann
INDIANA ATTORNEY GENERAL
molly.mccann@atg.in.gov

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL
ben.wade@atg.in.gov